In Bolenbach v. United States, the Supreme Court held that when a jury makes explicit its difficulties, a trial judge should claw them away with concrete accuracy. The former Fifth Circuit applied that rule in Anderton to hold that when the instructions use a term of legal significance, its meaning must be explained, especially when there is a request for a clarifying instruction. This Court's task now is to review de novo through the evidence presented in the arguments of counsel whether the District Court's response to the jury's question during deliberations confused or misled the jury to the prejudice of the defense. And in order to do that, I think it's important to take a step back and see what happened in this case. And that is that the government made a deliberate tactical decision not to pursue a theory of prosecution which would naturally have lent itself to this set of facts. And in fact, there is a document that I found in my review of the record in preparation for oral argument, the government's pretrial brief, in which they made explicit what is implicit throughout the trial, and that there was an agreement. And that the government made an agreement. It's document entry 29. The government agreed not to introduce a statement that the defense had moved to suppress, in which Mr. Joyner, according to the government's memorandum, stated that he had discovered the gun in the car and touched it to push it under the seat after he realized it was there. And in exchange for that agreement, the defense would not argue that this car had been used the day before in an armed carjacking that our client was not involved in and that someone other than our client had not been arrested for. So as the case proceeded through trial, it was all about whether or not the jury should believe the testimony of Detective Garcia that he saw the gun in Mr. Joyner's hand. The government's opening statement takes three pages of transcript and it is all about Garcia. Our opening statement's a little bit longer and it is all about the reasons why we maintained Detective Garcia's testimony, which was uncorroborated by the numerous means we might have expected it to be corroborated, should not be believed. The trial was very short. It was four witnesses. It was over and done in less than five hours. And after three hours of deliberation, the jury returned the question. And there's a heading of it, Clarification Regarding Possession. And possession's the only issue in this case. We stipulated he's a felon. We stipulated the gun affected commerce. We didn't dispute it was a gun. We hereby request further clarification of actual possession as defined in the court's instructions to the jury. Please explain or provide additional clarification or explanation on knowingly has direct physical control of it. Clarify direct as it pertains to physical control. Furthermore, does possession imply or not imply possession of the vehicle, whether on the vehicle or in the vehicle? It was very clear to the defense counsel who had tried this case that the jury was asking whether they could convict Mr. Joyner, notwithstanding Garcia's testimony that he saw the gun in his hand, based on the fact that the gun was in the seat of the car. The alternative theory would have been that the gun was under the seat of the car the whole time while Mr. Joyner and his brother were doing laundry. But the testimony was that the agent says he saw the defendant with the firearm in his waist. If I have it right, he took it out of his waist, he had it in his hand, he went to the car, the door was open, he leaned into the car, and the gun then comes out. He puts the gun in the car and then leaves the car and then the firearm is found in the car thereafter. That's what he says, right? He didn't actually admit to seeing him take it out of the waistband, but yes, that is correct, Your Honor. But the only question before the jury... He said that it had been in his waistband and then he saw it in his hand. I think he said that he inferred it had been in his waistband. Right, but the thrust of my question goes to, so if that is to be believed, it would be relevant, would it not, that he actually had the car on his possession in the car, albeit for a brief or fleeting period of time? Your Honor, if Your Honor is asking about the government's argument that our instruction was incorrect because there was some relevance to it in the car, we asked for the instruction to say the mere presence of the firearm in the car is not relevant. The government takes out the word mere in its brief, and I think it is significant. But the presence of the firearm in the car would be relevant. It would be relevant if, in fact, they credited that it was possessed by the defendant while he was in the car, albeit for a short period. Standing alone with a gun in the car would mean nothing. And that's the instruction we wanted. That wasn't his car. But if he possessed the gun outside of the car and then possessed the firearm within the car, wouldn't it be relevant that the gun was in the car? Wouldn't that fact be relevant? It would be part of a building block. Standing alone, it would not be sufficient. But it could be enough if they credited he had it in the car. I have two points to answer to that question, Your Honor. And that is, I don't think that that is a fair reading of the jury's question. Because there was absolutely no reason for any rational jury to question the meaning of possession if they believed that Detective Joyner, Detective Garcia saw the gun in his hand. There's no need to even ask about the gun in his hand. That's actual direct possession by any standard definition. And what we were never asking for the judge to tell the jury to ignore that split second when the gun was in the car. But doesn't that suggest that the simple fact that it was in the car would be irrelevant when it wouldn't be irrelevant? It would be relevant but not sufficient if indeed he possessed it and it was in the car at the same time. We asked for the mere presence instruction, Your Honor. Suppose the judge had turned around and said, how about if I give this instruction? The mere fact that the gun was in the vehicle, standing alone, is insufficient to show the defendant actually possessed it. But if you find beyond a reasonable doubt that the defendant actually and knowingly possessed the firearm while in the vehicle, however briefly, then you may find the defendant to have knowingly and actually possessed the firearm. Actual possession means direct physical control of something on or around his person. Suppose the district judge said, okay, you want a complete instruction? That's fair, accurate, and complete. That would have been okay by you? That would have been fine. The problem is that the jury was never instructed. If I were the defense lawyer, I sure would have objected to that. Because it almost sounds like I'm so marshalling the facts as to taking them right to the water's edge. Of course I say you may, you don't have to. It has to be beyond a reasonable doubt. But I put together A and B and C and D and E in such a way that it almost leads to, right, I'd have objected even if you wouldn't have for whatever it's worth to you. And there is case law that suggests that the instruction should not point in a particular direction. But what I'm focused on... Now wouldn't that charge point in a particular direction? Your Honor, honestly I was focused on the first sentence of the... No, no, but let me go over it again. The reason I ask it is because if the judge was to have done what you suggested she should have done, it seems to me this would have been a complete, accurate, direct statement of the law. The mere fact that the gun was in the vehicle, standing alone is insufficient to show actual possession. That's what you wanted. But if you find beyond a reasonable doubt that the defendant knowingly and actually possessed the firearm while in the vehicle, however briefly, then you may find the defendant knowingly and actually possessed the firearm. Actual possession means direct physical control of something on or around his person. Again, Your Honor... He could have said that and you would have had a hard time saying that instruction was wrong. But I'll tell you, if I were the district judge and the government asked me to give it, I wouldn't give that instruction. Because it seems to me it almost leads the jury to say, boy, there's a whole lot here, folks. The problem was, and I think this was the strategy decision that both parties agreed to, and that was to avoid getting into the fact that we could have defended this case on the fact that it wasn't his car and the car belonged to someone else or had been taken by somebody else who we know had a gun because it had been used in a car... It was the product of... But didn't the judge say the possession of the vehicle is not an issue in this case? Yes, Your Honor. In response to the government's instruction, which was designed specifically to eliminate, to separate the possession of the vehicle from the gun, the government specifically objected to tying the... To the instruction tying the presence of the gun to the vehicle. And that's what makes this case unique, because the government knowingly and tactically abandoned a theory of prosecution, elicited an agreement from the defense not to defend against it. Let's talk about what the theory of the case was and what the theory of the defense was just to make sure I understand it, because you started out talking about opening arguments and closing. Having read them, it looked like both sides, the whole case was about whether the truth or not, when he said he saw the gun, saw the defendant open the door, and take it out and put it down. Correct. If you look at opening and closing, you can't take this jury instruction out of context, right? You've got to look at the case. Correct. And it seemed to me that you couldn't tell them what you wanted, because if the gun was actually found in the car, because it was found in the car, right? It was found in the seat immediately thereafter. That tended to... Forget about whether possession of the gun in the car, it tended to corroborate Garcia's question that I saw him put it there, didn't it? It could, Your Honor, but it could also be consistent with the fact... So it was relevant to say, forget about whether you ever possessed the car or anything, it was relevant because, amazingly, this officer said, this guy put a gun in the car, and lo and behold, it's right where the officer said he saw him take it out and put it. Your Honor, the jury obviously was not convinced by Garcia's testimony, because they were out for longer than the trial. We argued that Garcia's testimony was not credible. I know, but that was the credibility here. That was what the whole trial was about, whether they found him credible or not, and so I don't understand how this charge in any way affected that. The charge allowed the jury to convict on a theory of constructive possession, even if the jury didn't... Nobody had mentioned that. Everybody had tried the case on actual. The jury went there on their own. That's clearly what they're saying. Can possession be implied? Can possession be implied whether in or on the car? The jury, using their common sense, went there on its own. And the district court says, go back to the... This is an actual possession case. I have charged you actual possession, direct physical control. The judge did not clarify to a lay jury that is not trained in the law that there is a distinction between actual and constructive possession. At no point was this jury ever told that constructive possession was off the table. This instruction allowed the jury to convict on a theory... No, they were told twice that the government had to prove actual possession. I agree they never mentioned... But the jury didn't understand what actual possession was, Your Honor. They asked a question about it. But the district court defined it twice and says it's actual direct physical control. But the jury sent a question back, and this is the Anderton case. This is directly like the Anderton case. In Anderson, it was an agent, and the jury asked, can a lay person be an agent? And the judge said, that's a factual determination. Go back to your instructions. And the former Fifth Circuit said that is not enough. When the instructions use a term of legal significance and there is a question, you must clarify it. The jury, the first sentence of their question was, we don't understand what possession means. Suppose the judge had said, as I understand it, the judge defined actual possession this way. The judge said, actual possession means direct physical control of something, right? Yes, Your Honor. In fact, we've approved an instruction that goes beyond that and says, actual possession means direct physical control of something on or around his person. Suppose the judge had added that. Your Honor... That would have been okay, too, right? And I think this goes to the Rule 30 argument, or the reason for it is that we had to know what we were arguing before closing arguments. We did not make any of the arguments we could have made if we had thought the jury was going to be permitted based on the presence of the gun in the vehicle. Let me ask you the question this way, and Judge Hull was alluding to it, but I just want to ask it directly of you. You wanted the judge to say the mere fact the gun was in the vehicle was not relevant, right? Not at issue, yes. Wouldn't it be relevant, and in that sense at issue, if for no other reason than it corroborated the account of the agent? Then it should have said, perhaps it would have been more apt for us to ask for an instruction that said the mere fact that the gun is in the car is not sufficient to convict. But the fact remains is we were very... But that's not what you asked for. The question that you put, just bear with me please, was, Judge, we want you to tell the jury, quote, the mere fact that the firearm was in the vehicle is not at issue, by which you meant to say it's not something they had to fuss with, think about, apply, consider. But it seemed to me that it was at issue in that sense that at least it arguably corroborated the account of the only witness the government really had. This was a one-person case against if they didn't buy Garcia beyond a reasonable doubt, they had to acquit, and if they did, they would convict. But did this go to corroborate his account that the defendant put the firearm in the car? Well, Your Honor, I mean, to the extent that this may be a semantic distinction, I'm going to rely on the fact that we asked three times for the word mere. So it's the difference between mere presence and presence. Presence may always be a relevant factor, but it's very clear that mere presence is not sufficient to convict. That is what we asked for, that is what the district court understood that we asked for, and that is what the district court refused to instruct the jury. This jury was never instructed that they could not convict on a theory that the government had chosen not to prosecute, and it elicited an agreement from the defense not to defend against. And that is what makes this case unique, and that's why we need a new trial. Thank you very much. Good morning, and may it please the Court. Good morning. Jonathan Osborne on behalf of the United States of America. In the district court, Mr. Joyner was convicted by a jury because he possessed a firearm and ammunition by himself with direct physical control the same way that I possessed this pen this morning. As Detective Garcia testified, Mr. Joyner possessed the firearm in his left hand near his waistband, and as he headed toward that vehicle in a rushed fashion and opened the door, Detective Garcia saw him again in possession of that same firearm as he dropped to his right knee and placed the firearm under the driver's side seat of the vehicle the same way that I might place this pen under the lectern. All of the evidence in the case, the testimony from Detective Garcia, the testimony from the lookout officer who gave the takedown signal, and all of the evidence recovered from beneath the seat, just as Detective Garcia said, supports the jury's finding that Mr. Joyner had sole and actual possession of that gun. As the Court has pointed out this morning, the only arguments forwarded by the United States in opening and in closing led to that exact conclusion. The evidence led to the same conclusion, and importantly for this morning's analysis, the jury's instructions from the Court allowed only one basis for conviction, and that was the basis that the jury had found based on not only the testimony of Detective Garcia, but also the testimony of Detective James and the... Let me ask you a question, just a fact question in the record. The testimony of the officer who saw or claimed to have seen the defendant with the firearm, does he say that he actually saw the defendant place the firearm in the car, or just that the defendant leaned in with the firearm in his hand? Judge Marcus, the officer testified that he personally saw the gun on two occasions in the defendant's hand. The first occasion was as he was withdrawing, as if he was withdrawing from his waistband, he saw it in his left hand. As he went toward the ground, and the Court will recall that the officer testified that he did a spinning motion, as he went toward the ground, the detective testified that he saw it again in his left hand as he reached toward the inside of the vehicle and placed it under the seat. The detective testified that at that time, Mr. Joyner was taken into custody, and that approximately one minute later, the detective himself looked in the vehicle and saw the firearm partially sticking out from beneath the seat. The detective also testified that as Mr. Joyner ran toward the vehicle, he called out 55. And this brings us to the question of, was there any evidence that corroborated this detective's testimony? And there certainly was. Detective James, the lookout, who called out the takedown signal, saw two men in front of the car, sensed that someone had unlocked the door using a key fob, and then called for takedown. At that time, he, too, observed Mr. Joyner run toward the driver's side of the vehicle, but he also heard something very important. He heard Detective Garcia call out 55, which, according to Detective James, meant the man running to the car... But James never saw a gun. That's correct, Your Honor. James testified... So the whole case turns on the credibility of Garcia. Your Honor, the United States would submit that it turns... And the corroborative fact that a firearm is found in the car afterwards. That's the case, right? Your Honor, and I would add to that, that it also includes Detective James, who candidly says, I didn't see a gun, who testified, however, I did hear the call out for 55, which to me meant gun. And I'll direct the court specifically to where Detective James says, at page 161 of docket entry 52, that he heard Garcia scream 55, and also at page 176 of docket entry 52, where Detective James stated that he concluded, based on hearing 55, that that means this guy has a gun, and he can possibly use it. Let me ask the question this way. What do you suppose the jury had in mind when they said to the court in their note, does possession imply or not imply possession of the vehicle, whether on or in the vehicle? What were they getting at there, as best you could tell? Your Honor, it's difficult to speculate as the question acknowledges, but it appears that they are at least considering testimony regarding the fact that the gun was recovered from the vehicle, and perhaps that when the gun was recovered from the vehicle, the defendant was not sitting in the vehicle. So why were they concerned about whether possession of the vehicle was relevant? Isn't that a theory of what we would call in the law constructive possession? No, Your Honor. I think under the facts of this case, and this is pointed out in the United States of America's brief, the facts up until that point would indicate that this individual did not have the power to return to that vehicle to recover the firearm, because he was taken into custody outside the vehicle just after placing the firearm. But remember, they hadn't heard what a classic construction on constructive possession would mean. You have the power and dominion over and the capacity to and the right to reclaim it at some point. They didn't know all that stuff. Correct, Your Honor. All they knew is that the officer said he had in his hand, the gun is found in the car afterwards, and they want to know whether possession of the vehicle is of some moment here, and they tie it together with the phrase whether on or in the vehicle, obviously meaning they were looking at the firearm. Otherwise, those words would have no meaning, right? I mean, what are they asking when they say does possession imply or not imply possession of the vehicle, whether on or in the vehicle? It's clear that it's kind of muddled in the way they were sort of groping for it, but would it not be fair to suggest that they were in their own mind raising some kind of constructive theory, even though they didn't know what constructive possession meant? Your Honor, in response, I wouldn't go that far to think that they were thinking of the legal concept of constructive possession, but it is clear from the question that they had some question and deliberations about how they should take into account possession of the vehicle. And in this case, the district court's response to that question brought the jury back to its sole focus. The court narrowed the jury's analysis and said, members of the jury, you are to consider whether or not Mr. Joyner had actual and sole possession of this firearm, which was the basis of the original. So your answer is even if they were operating in some vague way on a constructive possession theory relating to the car, the judge addressed that in two ways. One, saying possession of the car was not an issue. And two, the question before them was simply whether the defendant actually possessed the firearm. Yes, Your Honor. That is to say, had direct physical control. Yes, Your Honor. Apparently, the judge went one step further and also said, please refer to page 11 of the instruction for the definition of possession. Yes, Your Honor. And that was actual possession of a thing occurs if a person knowingly has direct physical control of it. Yes, Your Honor. Can you give me the site again where you say James testified he heard the .55? You gave me a docket entry 52. What was the page site where James said he heard Garcia say .55? Yes, Judge Hall. There were two page sites. Uh-huh. The first is page 161. The second is page 176. And as I understand the record, the jury had the charge in writing too. Your Honor, if I understand the question, the court is asking. The court sent out its charge on actual possession in writing. Yes, Your Honor. As well as giving it orally. Yes, Your Honor. Okay. The original jury instructions by agreement of the parties included the phrase possession, which was defined as actual possession. No, but the court sent it out to the jury. So they didn't have to just try to remember it. They had this definition of actual possession in the jury room. Yes, Your Honor. Okay. And to underline the court's reasoning here, I would like to point out also that at docket entry 53, the court actually explained to the parties before issuing its response to the question, its reasoning. And the reasoning was very clear that the jury should only focus on actual possession. And there the district court stated, quote, this is at pages 72 and 73. So they have to make a finding based upon these facts that whether or not Mr. Joyner had actual possession of the firearm and making that determination that he did not have possession by accident or unintentionally. The word knowingly means the act was done voluntarily and not intentionally and not because of a mistake or accident. So that is what they have to find. The court's response to the jury question was clear, it was lawful, and it did not mislead the jury. And for those reasons, the United States respectfully requests that the court affirm the conviction and sentence of the appellant, Mr. Joyner. Thank you, counsel. Thank you, Your Honor. Ms. Dresspel, you've reserved three minutes and you have the full rebuttal. Thank you, Your Honor. Judge Hall, just getting back to Detective James' testimony, he could not say when he heard Detective Garcia call out 55. He could not say whether that was before or after the takedown. And that is at pages 171 to 172 of document 55. Oh, was it before they went into the car? That's what he could not say. He was asked that on cross-examination and he could not clarify before or after the takedown, but could he clarify before or after? Oh, it was definitely in the car. The gun was in the car. Well, I'm not even sure he could clarify that, but he couldn't say that he saw the gun before it was in the car, at least. I want to make it very clear, the court's response to the jury at document 37 only did not specifically limit the response to actual possession, as did the jury's initial question. Again, its heading was clarification regarding possession. And the court responded, the possession of the vehicle is not an issue in this case. The issue before you is whether Mr. Joyner possessed the firearm and ammunition. Right, but isn't it relevant? The judge went one step further, didn't she? She referred the jury back to the original instructions, but in the Anderton case, the former Fifth Circuit held that's not sufficient when the jury asks for clarification of a term of legal significance. Why wouldn't it be sufficient if the judge referred them back specifically, not just to the instructions in general, but to page 11 for the definition of possession, where when you look at it, the judge defines actual possession and only actual possession? Because the very first sentence of the jury's question at document 37 is, we hereby request further clarification of actual possession as defined in the court's instructions to the jury. The jury, after a five-hour trial, had been sitting with these jury instructions for three hours and had been unable to answer what that meant. But you see, the problem is, even assuming arguendo, all of that is right, I asked at the beginning, what should the judge have said? You have to concede that if the judge had said what you say, what you asked the judge to say, that wouldn't have been correct. It wouldn't have been correct that the mere fact that the gun was in the vehicle was not at issue, because in some sense, it was at issue to the extent the jury might have believed that he possessed the firearm while in the vehicle. So that would be an incomplete way of answering the question, and if you try to give a more complete answer, as I tried to do at the outset, it seems to me you almost get into more trouble. I disagree, Your Honor. Tell me why. First of all, I disagree that our request was incorrect. There's a difference between mere presence and presence. We were just telling the jury they could not convict on the mere basis of the gun in the car alone. It was very clear to us that That's an argument. That's an incomplete statement of the law. Well, I would point the court to the Stevens case, which is a Fifth Circuit case, I believe, from 1994. When it was clear that the jury was going down a road of conviction that was not available to them, the court held that the district court was obligated to tell them, you cannot convict on that basis. And what we asked, and it's very, very clear, it's a three or four page colloquy, we were very clear with the district court, we think they're old, they cannot argue construct, they cannot convict on constructive possession. That was very clear to us. That's what the jury was asking. And it is equally clear that is not what the court answered. This was a one day trial. Mr. Joyner is now serving nearly 17 years in prison. You don't think it's an answer to say, even if they were asking about constructive possession, this is actual possession case, read the instruction on page 11, which defines active and active possession alone? No, Your Honor. And I would point the court again to the Anderton case. There's a term of legal significance that this jury explicitly told the court they didn't understand. And they asked a question, and their juries are told to use their common sense. And your common sense in this case suggests constructive possession. And it is only because the government deliberately chose not to argue constructive possession, elicited an agreement from the defense not to defend against constructive possession, and took it out of the instructions. I need to ask you about context, because you just, quote, does possession imply or not imply possession of the vehicle, on the vehicle, or in the vehicle. But right before that, like you say, the jury says, clarification regarding possession. We request clarification of actual possession as defined. Please explain or give extra clarification about, quote, knowingly had direct physical control of it. Clarify direct. And then they say, does that have to do with the vehicle? And the judge replies, no, possession of the vehicle is not at issue. Seems like that helped you. No, Your Honor. By saying you can't, I mean, I just wonder if it's ambiguous. There's one construction that might help you. He basically is saying, we're not talking about the car. The car is not an issue. So that kind of told the jury it had to be what Garcia said or nothing. It did not, Your Honor. And the court can see that that's what the government wanted. If the court looks at the colloquy where they were discussing this, the government specifically objected. No, I'm looking at what the jury asked. I understand, Your Honor. I think that's what we need to see here. What are they asking? And what is the response? Not what either side want. But the response doesn't address the presence of the firearm in the vehicle. It merely states because there was evidence that this car had been involved in an unrelated offense. It's even stronger than that. He says possession of the car is not an issue in this case. The only issue is whether he possessed the gun. Why doesn't that say you can't use the car as a way to get him in the gun? You've got to show that he possessed it, not that it was in the car. Why is that not what he's telling the jury? Well, I can just tell the court that both the district court and the government didn't interpret it that way. And it was deliberately phrased not to tie the two events together. Thank you. Thank you, Your Honor. Thanks very much. Thank you. Thank you, Mr. Osborne. And we'll move on to the next case, which is the